THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM SIRACUSA *et al.* Plaintiffs in Error.

*Opinion filed October 24, 1916—Rehearing denied Dec. 7, 1916.*

1. CRIMINAL LAW—*when amendment of record is unnecessary.* Where it is apparent that in the *placita* the three judges of the circuit are mentioned simply as the judges of the court and that the judge designated as presiding was the only judge present and participating when pleas of guilty were entered, and where the original record also discloses all that is required to be disclosed, under the statute, with reference to the admonition given to the defendants upon pleas of guilty, it is unnecessary to amend the record to show clearly that there was but one judge presiding at the time and that the defendants were fully admonished as to the effect of their pleas.

2. SAME—*when it will not be presumed the court erroneously stated the effect of pleas of guilty.* Where the record discloses, in the language of the statute, that the court explained to the defendants the consequences of their pleas of guilty, it will not be presumed that the court erroneously stated to them the effect of such pleas unless there is positive proof in the record to that effect.

3. SAME—*power of court to punish defendants who plead guilty on a charge of murder.* Where defendants are indicted for murder and plead guilty to that charge the court is empowered to punish them by sentencing them to be hanged or to be confined in the penitentiary for the term of not less than fourteen years and from that term up to the period of their natural lives.

4. SAME—*when provision in judgment for parole of defendants convicted of murder is mere surplusage.* Where the judgment of conviction for murder clearly and unmistakably commands that the defendants each be confined in the penitentiary for the term of his natural life, a provision in the judgment for the parole of the defendants or their discharge by the prison board, as authorized and directed by law, is surplusage, since the warden of the penitentiary and all other persons having to do with the administration of the criminal laws are bound to take notice whether, under the existing law, the Parole act applies to anyone convicted of murder.

CARTWRIGHT, J., dissenting.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

CHARLES E. ERBSTEIN, and CHARLES P. R. MACAU-LAY, for plaintiffs in error.

P. J. LUCEY, Attorney General, GEORGE S. WILEY, State's Attorney, and C. H. LINSCOTT, for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

Plaintiffs in error, Sam Siracusa and Mike Spagniolo, were indicted at the June, 1913, term of the LaSalle county circuit court for the alleged murder of Frederick Diercks on May 29, 1913. They were arraigned, pleaded not guilty and at the October term the trial of the cause was entered upon. During the progress of the trial each was granted leave to withdraw the plea of not guilty and each entered a plea of guilty. After the court had explained the consequences of such plea plaintiffs in error each persisted in the plea and each was sentenced to the penitentiary for the term of his natural life. The judgment of the court commanded the warden of the penitentiary at Joliet to take the body of each of said plaintiffs in error "and confine them in the penitentiary in safe and secure custody, or on parole, from and after the delivery hereof, each for the term of his natural life, the first twenty-four hours to be in solitary confinement and until discharged by the prison board, as authorized and directed by law." This writ of error has been sued out to review the record of the circuit court.

The grounds urged for reversal are: (1) The court was not legally constituted; (2) the court erred in entering pleas of guilty before fully explaining to plaintiffs in error the consequences of such pleas; and (3) the court erred in sentencing plaintiffs in error under the Parole law.

The *placitas* for the June and October terms of the circuit court each recited: "Pleas, proceedings and judgments before the Hon. Edgar Eldredge, Joe A. Davis and Samuel C. Stough, judges of the thirteenth judicial circuit of the State of Illinois, at a regular term of the LaSalle county

circuit court begun and held.  *  *  *  Present, the Hon.
Edgar Eldredge, presiding judge," etc.   The first day of
the October term was on October 13, 1913.   On October
20, 1913, the record discloses that Hon. Samuel C. Stough
presided as judge on this day, and the trial of the plaintiffs
in error was entered upon before Judge Stough.   The rec-
ord as originally filed disclosed that after plaintiffs in error
had entered their pleas of guilty the court explained to them
the consequences of such pleas, and that after the court
had heard evidence submitted on the pleas of guilty, neither
of the plaintiffs in error, nor their counsel for them, saying
anything further why judgment should not be pronounced
upon the pleas of guilty, judgment was accordingly pro-
nounced.   After the writ of error was sued out, upon leave
granted, the People filed an additional transcript of the rec-
ord containing amendments which had been made to the
record, showing clearly that Judge Eldredge alone presided
at the June term of the circuit court and that Judge Stough
alone presided at the time the pleas of guilty were entered,
and showing more fully and conclusively that the court had
fully explained to the plaintiffs in error the consequences
of their pleas of guilty and that they still persisted in such
pleas.   The amendments to the record were unnecessary, as
it clearly and sufficiently appeared that there was but one
judge presiding in the circuit court at the time these pro-
ceedings were had.   It is apparent that in the *placita* the
three judges of the thirteenth circuit were mentioned simply
as the judges of that court, and that the judge designated
as presiding was the only judge present and participating.
The original record also disclosed all that is required to be
disclosed, under the statute, in reference to the admonition
given to plaintiffs in error upon their pleas of guilty.

Counsel for plaintiffs in error contend that it is appar-
ent that the court was in error as to the statute under which
the sentence should be imposed, and therefore it must fol-
low that he could not have properly explained to plaintiffs

in error the consequences of their pleas. This contention is based upon the assumption that the judgment of conviction was entered under what is commonly known as the Parole or Indeterminate Sentence act. The judgment was not entered in conformity with that act; but even if it were, the record discloses, in the language of the statute, that the court explained to the plaintiffs in error the consequences of their pleas of guilty, and it will not be presumed that the court erroneously stated to them the effect of such pleas unless there is positive proof in the record to that effect. The judgment of conviction is informal, but it is not shown to be so inaccurate or uncertain as to cast any doubt upon its effect. The plain intent and purpose of the judgment was that plaintiffs in error should each be confined in the penitentiary for the term of his natural life. They were indicted for murder and plead guilty to that charge. The court was empowered to punish them by sentencing them to be hanged or to be confined in the penitentiary for the term of not less than fourteen years and from that up to the period of their natural lives.

By the first section of the Parole act the crimes of treason, murder, rape and kidnapping were expressly excepted from the operation of the act. The parole system at that time had no application whatever to a conviction for the crime of murder. The provision in the judgment for the parole of plaintiffs in error or their discharge by the prison board, as authorized and directed by law, was surplusage, and the warden of the penitentiary and all other persons having to do with the administration of the criminal laws were bound to take notice that as the law then existed the Parole act did not apply to anyone convicted of the crime of murder, and that the law did not authorize or direct anyone so convicted to be released on parole or to be discharged by any prison board. The judgment clearly and unmistakably commands that plaintiffs in error each be confined in the penitentiary from that time for the term of his

natural life. There is no ambiguity or uncertainty about the judgment of conviction, and the plaintiffs in error are properly held in confinement in the penitentiary thereunder. The language pointed out and complained of in the judgment in nowise renders it uncertain or impossible of execution. It is clearly surplusage and should be disregarded.

The judgment of the circuit court was proper and is accordingly affirmed.                    *Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, dissenting:

Section 4 of division 13 of the Criminal Code prohibits the entry of a plea of guilty until the court shall have fully explained to the accused the consequences of entering such plea. In this case the defendants each entered a plea of guilty, and the record recites that the court explained to defendants the consequences of such plea. The record does not show what the court explained to the defendants would be the consequences, but what the court understood would be the consequences of the plea appears from the actual consequences which followed. The court entered judgment commanding the warden of the penitentiary at Joliet to take the bodies of said defendants "and confine them in the penitentiary in safe and secure custody, or on parole, from and after the delivery hereof, each for the term of his natural life, the first twenty-four hours to be in solitary confinement and until discharged by the prison board, as authorized and directed by law." Inasmuch as the record does not indicate in any manner what the court explained as the consequences of the plea or that the explanation differed in any respect from the judgment entered, it seems to me that the only legitimate inference is that the explanation of what the judgment might be corresponded with the judgment, and on the question whether the consequences of the plea were correctly explained it is not material whether the judgment was good or bad.